CYCLOPS REALTY CO. v. LEVY et al.

(Supreme Court, Appellate Term. May 27, 1912.)

BILLS AND NOTES (§ 370*)—RIGHTS OF BONA FIDE PURCHASERS—BREACH OF COLLATERAL AGREEMENT.

Where a person engaged in buying fat, and who frequently loaned money to butchers and keepers of meat markets, gave a check to a tenant conducting a meat market on the security of a chattel mortgage covering the lease and fixtures, which the tenant gave to his landlord in the due course of business, and the lease is still in his possession, and the fixtures have not been removed, he cannot stop payment on the check, as against an indorsee in due course, merely because the tenant has failed to deliver fat, as agreed; this being merely a breach of a condition subsequent, which would not invalidate the check.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. § 963; Dec. Dig. § 370.*]

Appeal from Municipal Court, Borough of Manhattan, Second District.

Action by the Cyclops Realty Company against Joseph Levy and others. From a judgment for Joseph Levy, and another, doing business as Joseph Levy & Co., plaintiff appeals. Reversed, and new trial granted.

Argued May term, 1912, before SEABURY, LEHMAN, and PAGE, JJ.

Henry J. Krinsky, of New York City (J. I. Berman, of New York City, of counsel), for appellant.

Nathan D. Levy, of New York City, for respondents.

PAGE, J. This action was brought to recover upon a check for $75 given by the respondents to Morris Ederer, and by him indorsed

and delivered to the plaintiff.   The facts, as developed in a fragmentary and disconnected way by the evidence, would appear to be that the plaintiff owned the building, 186 East Third street, in this city, and that Morris Ederer had been a tenant of the store therein for about four years without a written lease.   In March, 1912, he owed the landlord $30.   Ederer conducted a meat market, and the respondents' business was buying fat, and they frequently loaned money to butchers and keepers of meat markets.   Plaintiff's vice president, Waxburg, was pressing Ederer for payment of the rent, and was told that the respondents were to give him (Ederer) a check for $75.   Waxburg called respondent on the telephone, and had a conversation with Mr. Ackerman, and inquired whether they were going to give Ederer a check for $75, and Ackerman said he would not give him the check unless he had the lease signed.   Waxburg and Ederer met at the office of respondents, and Waxburg delivered to them a three-year lease of the premises made to Ederer at a yearly rental of $396, payable $33 per month in advance.   In the lease was an acknowledgment of the landlord that he had received $33 as security that the tenant would faithfully perform the covenants of the lease.   On the receipt of the lease the respondents had a chattel mortgage to secure the payment of $75, transferring to them the said lease and the fixtures in the store, whereupon Ederer executed the mortgage and respondents gave him the check in suit, which he indorsed and delivered to plaintiff, who applied $30 on the past-due rent, retained $33 deposit, and gave Ederer $12 in cash.   On leaving Ederer told Mr. Ackerman that he had quite some fat down there which he could send and get.   On Monday, two days later, Ackerman sent for the fat and found the store closed, and immediately stopped payment on the check.

We can see no possible theory on which a judgment for the defendants can be sustained.   The plaintiff was a holder of the check in due course of business.   Respondents advanced the money on the security of a chattel mortgage upon the lease and fixtures.   The fixtures were not removed from the store, and they had the lease in their possession. There may have been some understanding that thereafter Ederer would sell fat to the respondents; but that would be a condition subsequent, and its failure would not invalidate the check.   No such understanding was proved.   The check was not given in payment for the fat in Ederer's premises.   Upon the evidence judgment should have been given for the plaintiff.

Judgment reversed, and new trial ordered, with costs to appellant to abide the event.   All concur.